Thank you, Your Honor. May it please the Court, Michael Spector appearing on behalf of Mr. John Killeen, the petitioner in this case. Your Honor, since we've been here four years ago, I have to continue with the washing machine analogy from the prior case. Mr. Killeen has been put through the wringer and hung out to dry by the Office of Personnel Management and the Merit Systems Protection Board. Is he receiving any benefits at this point? Yes, he is, Your Honor. He is receiving the annuity that they have determined is correct using the convoluted equation that they have come up with that's weak intent, not consistent with the statute. So the issue is whether or not the additional amount that Mr. Killeen has calculated versus what the OPM has calculated? Yes, Your Honor. But there is a base that he is receiving so far. I don't want him to be hung out to dry completely. No, sir. He is receiving the partial annuity. He hasn't received the annuity that we feel that he's entitled to and we feel that he's earned as working as a full career as an air traffic controller. This case was decided four years ago, and I would not expect that the individual would not be receiving at least some benefits. No, he has been receiving benefits, Your Honor. However, I would note that the reason that this case became so convoluted was because, and it's reflected in the appendix in the briefs, is that it took over a year, I believe, for OPM to finally, this case went back to the Board for this Court's decision, and it took the Merit Systems Protection Board almost a year to ask OPM to recalculate. It took almost another year for OPM to do that. And then when they finally did that, I believe they did pay the arrearages that were due up to the point that they felt that they were appropriate. But then we went two trips to the Board, and the last one they decided that after they had sent it back for jurisdictional grounds, clearly inviting us to appeal, noting that basically one of the reasons we did do it, we did two things. We went back to the Board and we said, look, OPM has not complied with your order to recalculate the annuity appropriately, and we also filed a petition for reconsideration with OPM. At that point, the Board said, we're going to rule on this, but it has to get back to OPM. This all turns on your argument of whether we can read the statute slightly different for someone who performed no part-time work after the particular cutoff date that the statute provides. And Mr. Killeen didn't. But the problem we may have when we hear from the government is that the statute doesn't seem to make that distinction. The statute says the employee whose service includes service that was performed on a part-time basis. Well, that's Mr. Killeen. Even though that part-time basis occurred before the cutoff date, the 86 April cutoff date, he still did perform part-time service. Yes. Excuse me, I have it backwards. He performed it after the cutoff date. But still, the statute doesn't have any distinction about where he performed the part-time service. It says simply for someone whose service was performed on a part-time basis. That's correct, Your Honor. So why would we make, why would we kind of read into the statute a distinction that, well, since his part-time basis came after rather than before, we'll apply a slightly different rule? I think, Your Honor, that the issue is this. The statute is very clear, and we totally agree. It says the statute deals with part-time service. And the statute, as you note, Judge Carr, in your decision that was written four years ago, the statute deals with calculations. It tells you how to make a calculation. And it says you take the average pay. Well, this court in its prior decision determined what average pay was, that it was the rate of pay. So you take his, that's finding out the high three. You determine what the high three is. And then it says the benefit in Section B, it's very clear, and I totally agree with you, Judge, the benefit so computed shall be multiplied by a fraction which is made up of the employee's total service to reflect that service that was done on a part-time basis. Well, in this case, total service is defined, Judge Rader, at 8332 as the full service. His whole 20-year career. And so, therefore, if he had only full-time service before, you only make that one calculation. So we are asserting that OPM are the people that are misreading the statute in their regulation, that clearly Congress intended by this statute to close a loophole. The loophole was that what happened prior to 1986 was somebody could barely go along working part-time for 17 years of their career. They could work full-time for the last three years and get a completely full pension. And OPM and everybody else in Congress said, you know, that's not right. And it wasn't right. So they changed it. But they didn't mean to penalize somebody who didn't work part-time. Who slowed down a little bit at the end of their career, maybe. That's right. And that's essentially our argument. The statute is very clear. The legislative industry is very clear. You keep saying the statute is clear. If the statute were so clear, I don't think OPM would be reading it the way they do. Do you? Well, OPM And what's in it for them to read it so clearly wrongly if the statute is so clear? The issue, as I understand, one of the issues, as I understand it, is whether we're going to have in the calculation two high three calculations. Isn't that right? That's correct. Yeah. Pre and post. Pre and post. Right. And you want one. If you have full-time service only prior to 1986. We're only going to deal with that. We're not going to deal with the five-part. If you have part-time before then, then we concede that, yes, you probably should do two calculations because I don't even want to go there because that case is not before us. What they want to do with the part-time before 1986 is close to a nightmare and I don't even want to talk about it. Let's only talk about the facts of the case before us. So you want one high three and they want two high threes in their calculations. I don't think the statute is all that clear. That's the only point I'm raising to you, Mr. Spector. But that all depends on how you interpret total service. I think it's also how you interpret the statute. Assuming for the moment the statute is not so clear, then what deference, if any, do we owe to OPM on an interpretation of the statute? Well, I don't think that the deference is owed because the statute basically indicates and the legislative history says that it refers to part-time service. As this Court noted, it doesn't refer to full-time service. The statute itself is titled, the section is titled part-time service. In other words, what it does if you do it the way that OPM wants us to do it and has been trying to do it but has been recently overruled at the board in the nickel case, which is another interesting facet of this. Not to mention the race judicata issue, which we can get to if you want, although I think that's pretty much a dead issue, I hope. Let's find out from the government what they think of the collateral estoppel issue. They conceded that. They agree with us. We're not even talking about that issue. But it basically says that the legislative history, what they make so much of is this 15204C, which was the section that wasn't codified. The whole statute was 15204A, and then the 15204C, which is page 21 of their brief, they seem to say, and they do misquote there, they say that the amendments made by section 15204 are effective only to service performed on or after the date of this date. But it says, what it really says is with respect to. With respect to, doesn't that mean you have to perform one calculation for post and under the new criteria and one under the pre, under the old? Because the amendments are effective with respect to things happening after the date. But looking at what the amendments are for, Judge Rader, the amendments are only for part-time service. So, therefore, I think it's a fair reading, a clear reading, to say it doesn't apply to all service, it applies to part-time service. If it were a full-time service after that time, there wouldn't be any need to use this section at all. It only applies to part-time service. It doesn't apply to all service. So that gets us back to, do we read in an intent to apply this, even though it says across the board for all service, this part-time doesn't apply when the part-time didn't happen after the cutoff date, in your impression. Before the cutoff date. Yes. If the part-time occurred before, if the part-time occurred after, they should use the statute and follow the statute using the words total service, which they knew what total service meant. They knew that total service, it doesn't say service after. In the statute, that would have been, if they had meant to only apply it to full-time service, you know, afterwards, they could have said total service after. They didn't do that. Total service would mean essentially prior to and after the statute. Yes. Total service. You raised the Nichols case problem, which is not before us. It's not, but it could have been. The only thing that is actually before us is the decision of the board to the effect that the decision of the AJA is wrong because of collateral estoppel. That's correct. The government has conceded the board was wrong. Correct. You believe the board was wrong. I have no choice but to believe the board was wrong. What is the proper disposition for us at this point? Do we say, by golly, the board was wrong and send it back to the board and say to the board, would you please now answer the question that was raised by Mr. Spector after all these years, which is how do you actually go about doing this? Do you have a one high three as you did in Nichols or do you have two high threes as OPM seems to think it wants to do? You, dear board, have never decided that. Isn't that true? Well, they decided in Nichols but not in this case. But not in this case. They have never decided that question for this case. You're absolutely correct. Isn't that what we ought to do? I think that that's one option. The other option is to actually indicate since it's been brought up on appeal. I think that the respondent has noted the Dandridge case and said, well, we can bring up anything even though the collateral estoppel basically they conceded kind of was wrong. But they also say there was an alternative finding but there really wasn't. Dandridge in that footnote actually doesn't quite say what they say. Well, we could do the board's job for it. I suppose we're free to do that. You're busy enough. Because, you know, as judges, we'll do it anything we want to. But putting that aside for the moment, I'm wondering what the proper way to get this whole issue finally resolved. Do you want to speak in rebuttal time, Mr. Spector? Yes, I would like to speak a little bit but I'm okay. The problem in your case is that there's only a relatively small percentage difference. I think it's 28% versus 30%. But I can come up with some hypotheticals in which that two different high threes will bring about dramatically different results. Yes, they would, Judge. And I think someone needs to address that. I'm not sure it's us at this point. Are you? I'm trying to get an idea what you want. Well, perhaps the best thing would be to send it back to the board and tell them to resolve it according to Nichols. But I have a feeling that we'll be back here in three more years when OPM appeals that. Has Nichols been appealed? No, it wasn't. And I think that it could have been and then these cases would have been joined and then this matter would have been resolved now. So the record, at least we couldn't find any appeal on Nichols. No, there is no appeal on Nichols. It is the law. Thank you, Mr. Spector. I'll reserve a little bit of time. Thank you, Judge. Ms. Hogan. Good morning, Your Honors. May it please the Court. Would you mind moving directly to the question I was just addressing? Absolutely not. I take it you do concede the board was wrong. We concede that the board was incorrect on the issue of collateral style law. Okay, which is the only issue they really decided. In this case. That is the issue that the board decided. It was not the issue that either of the parties raised. And on page 10 of the joint appendix, which is the MSPB's opinion, the final disposition of the case was OPM's reconsideration decision on how to calculate Mr. Killeen's annuity is sustained. Yes, but that was because they thought their consideration was collaterally estopped. Your point is exactly correct. They never actually dealt with the issues that the government and Mr. Spector raised that Mr. Killeen brought to the board. Isn't that correct? That is correct. What should we do? From the government's viewpoint, what is it we should now do with this case? This court should decide the case on the merits as the parties presented the merits to the MSPB and as the parties present the merits here. Rather than give the board an opportunity to do its job. This court is, as we cited to Dandridge in our brief, this court is free to affirm the judgment on any basis the appellee or the respondent raises, even if the board never decided that issue. Both parties had the opportunity to brief the issue before the board. Both parties had the opportunity to brief the issue here. And there's certainly nothing that we can see as a matter of allowing the board another opportunity. But the effect of that is to put into our law something we have not had the wisdom of the board on, right? We haven't seen the board presenting us with their decision, which we can then review on its merits. Well, of course, this court reviews decisions, legal interpretations of the MSPB without deference. Indeed, if we want to guess where the board would go, the board would go against you, according to Nichols. That is correct, as best as we can guess. Wouldn't you be eager to get this case back to the board so that you could undo Nichols? Or do you concede that Nichols is right? We think that Nichols is irrelevant, actually, to the issue. And the reason for that is that all of Ms. Nichols, we believe that all the statements that Mr. Killeen cites to in his reply brief with respect to Nichols are dicta. And the reason for that is that Ms. Nichols did not have any part-time service covered by CSRS. So that Section 8339P did not apply. She was covered by FERS. She was covered by FERS. Yeah. Wow. Okay, that's a nice distinction. So, well, it is a distinction with a difference, Your Honor, because 15204C, which applies to 8339, contained a non-retroactivity provision, which 8415, the first provision, does not. Getting to the merits, which should we do? One calculation or two? OPM should do two calculations. And the reason for that is this. When Congress passed the amendments in 1986, it drew a clear distinction. The new way of calculating an annuity would be applied to service on or after April 7, 1986. OPM should continue to apply the old way to all service prior to that date. Congress knew how to use the term part-time service and service. It used the term service. All service, and you mean full-time service? Service. Service is employment that is creditable towards an annuity. How would you interpret total service? Total service must be read in the context of the limitation that Congress placed on it, which is that all of 8339 only applies to service performed on or after April 7, 1986. So total service has to be limited to the service that was performed on or after that date to the date of retirement. Well, but it says, bears to the total service that would be creditable to the employee if all of the service had been performed on a full-time basis. So what does that mean? Does that mean total service relates back through that time period? Otherwise, would it make any sense the way they've done it? You'd be reading total service completely out of the statute. No, Your Honor. So let's say an employee works 20 years, from 1986 to 2006, and that was performed 30 hours a week on a 40-hour week schedule. What OPM would do to do that proration factor would be to take the hours performed, total hours performed, every hour that they showed up, and do proration based upon what a full-time tour of duty would be. So the proration factor would be 75%. What about the time spent before 1986 as a full-time employee? Why should that time also be considered as part of the total service? Because Congress precluded OPM from applying 8339 to any service prior to the date of enactment. So the time that's spent before 1986 is calculated using the prior rules. But wasn't the intent of Congress really to eliminate the possibility that the person would have part-time service prior to and then end up with full-time service after the date and still have a calculation with the high threes? Now, in that particular situation, you would say the full-time service or the entire service should be taken into account. Yes, that's the loophole that Congress was trying to close. But even in doing that, Congress preserved that loophole for people who had service prior to 1986. Congress said, okay, going forward, these are the new rules. This is going to apply to all your service. And the old rules using an actual pay rather than a rate of pay and crediting service as if it were full-time, whether or not it was full-time, remained the law for a service performed prior to that date. So let's say the benefit of the new law, which is that you get to use a deemed rate of pay rather than your actual pay, was not given to the pre-1986 service. But nor was the detriment to the new law, which is that your service is now going to be prorated, or I'm sorry, your benefit is now going to be prorated to account for how much of your time is actually spent part-time versus a full-time. But including total service in the post-86 annuity isn't the same as using the statute to calculate the pre-86 annuity. Doesn't the proration factor include total service? That seems to be the plain language of the statute. I'm following a little on what my colleague suggested. So the total service, how can you limit the total service to just half the calculation when you have to prorate as part of the whole enterprise? Because Congress limited using 8339 to service on or after April 7, 1986. So for example, Mr. Killeen, after 1986, he worked full-time until about his last few years. Because you read Section C to say that everything, including the term total service, only applies to post-86 service. Correct. There really are two separate issues, aren't there? One issue is how many high Cs do we use? And the second issue is how do we calculate the prorating? How do we apply the prorating factor? Correct. They're separate, aren't they? And both of those, however, are answered. And OPM has interpreted and promulgated these regulations, which have been in place for 21 years, based upon their reasonable interpretation of what Section 15204C means. And OPM has interpreted service to mean service broadly and has not read into 15204C the limitation, the extra qualification that Mr. Killeen is seeking to do now. The qualification that Mr. Killeen is seeking to do was not one that Congress placed upon 8339. Congress didn't say, use this new statute for service on or after April 7, 1986, unless the annuitant had full-time service prior to 1986. Congress didn't make that qualification. It said, use this 1986 onward, use the old rules prior to that date. You're saying Congress anticipated this whole set of nightmares, aren't you? Well, where Congress doesn't anticipate an issue, Congress leads it to OPM, which is the agency responsible for promulgating regulations to interpret reasonably the statute. And so even if there is another reasonable way of dealing with this problem, this Court must still defer to OPM's interpretation of how to apply this across the board. Not simply, is it fair to Mr. Killeen, but how... Unless we read total service to mean total service without limiting it by your Section C application to total service. And this Court would have to find that the interpretation of 15204C that OPM has given it is not a reasonable interpretation. For the total service definition. I'm sorry? For the total service definition. For total service, but also in the whole way that OPM has dealt with the calculations. Congress didn't provide OPM with an explanation of how exactly to do this. And Mr. Killeen concedes that when an annuitant does have part-time service prior to 1986, that this is the correct way to do it. So there is certainly a gap left by Congress for OPM to fill. And OPM has filled it in a way that can be applied fairly across the board to all annuitants, no matter what their particular work history is. What would be the resolution on your judgment if we remand it? What instruction should we give OPM on that basis? If this Court remands... If we remand it, hypothetically if we decide to remand the matter to OPM, what should the instructions be with respect to the calculation? MSPB is charged with reviewing OPM's final reconsideration decision for compliance with the statute and regulations. And so if this Court were to issue a remand order, it should be to review OPM's reconsideration decision, as the initial administrative judge did in this case in a way that was not favorable to OPM, but to reconsider the administrative judge's decision and decide whether that is a correct interpretation. The board seems to be consistently not favorable to OPM on this one, doesn't it? Thus far, Your Honor, that does appear to be correct. But we believe that, again, this issue is ripe for determination by this Court, and at least it seems that both parties agree that this Court can decide this issue without running afoul of any judicial efficiency principles. Should we make the calculation then? Or just go back to the administrative judge's calculation and say that that was correct and they should be implemented? The calculations are in the joint appendix, and I'm not sure that Mr. Killeen is contesting that the calculations were incorrect. He's contesting OPM's interpretation of the statute in its regulations. The methodology, not the calculations, not whether they misadded a number. As I understand it, one calculation comes up with 91 percent and the other one with 88 percent. Well, the calculation that Mr. Killeen comes up with is 91 percent. The one that OPM came up with is 88 percent, and that's just a difference in whether he used the total service after 1986 or his service back to 1981, which we contend is contrary to the statute's requirement. Well, if he used the total service going back to 1981, that's how you come up with 91 percent. Yes, Your Honor. If this Court has no other questions, we would respectfully request that the Court affirm the judgment of the MSPB. Thank you, Ms. Hogan. Mr. Spector, you have a little over a minute. Thank you. Just a few things. First of all, the analogy between 4515 for the FERS calculations and the fact that 104, the implementing provision, which basically says that it only applies prospectively, it doesn't really deal. It's a red herring for FERS because FERS didn't come into effect until January 1, 1987. So obviously you wouldn't have to say anything for FERS. So the 15204C provision that's there for 8339P is really just for that and doesn't really apply to the FERS calculation. But other than that, they're exactly the same. The benefit is computed. It's prorated against total service. And just to put this in perspective, Judge William Forder was the chairman. We didn't have this at the first go-around, but we did get it in between the first time this case was up here. It shows the chairman of the House Civil Service Committee says in his interpretation of this, and he clearly follows our reading of the statute in that he feels that part-time before 1986 should be calculated the old way, part-time after the new way, and tells OPM to do that. I'm kind of going to add a letter that he wrote, so it's at page 43 and 44 of our brief, of the appendix. It's sort of like a baseball game in a way. You have one career. It's nine innings. And what OPM is trying to say is, okay, we'll take the first four innings, and if you have a lower score then and if you have a higher score in the last four innings, you're not going to win the game because we're going to count the first four innings. It just doesn't make sense. We have one career. It's such a catalytic thing. Thank you, Your Honor. Thank you very much.